Good morning. May it please the Court, my name is Rebecca Wedeen. I'm appearing on behalf of the County of Alameda, Diane Moss and Sue May, who are the appellants in this case. And I'd like to reserve four minutes of my time for a bit of rebuttal, please. The issue presented in this appeal is whether the plaintiff, as a minor sibling, has standing to sue under Section 1983 for loss of familial association and emotional distress damages arising out of what is undisputably the very tragic death of his minor sister while they were both in foster care. In the Ninth Circuit, it's been determined that siblings don't possess the right to sue for familial association under Section 1983. This was established in the Ward case, which expressly adopted the Seventh Circuit's reasoned decision in Bell v. City of Milwaukee. Ward held neither the legislative history nor Supreme Court precedent had found an interest for siblings that was consonant with that found for parents and children and siblings and spouses. Correct me if I'm wrong, but didn't Ward deal with adult siblings? It did deal with adult siblings, but our position in this case was the same. And didn't it arise in the context of a Fourteenth Amendment claim? It did, Your Honor. It certainly did. Here, there's two. J.P. has several claims, but the familial association claim arises under the First Amendment, right? Yes, Your Honor. And the district court below appropriately ruled that Ward barred plaintiff's Fourteenth Amendment claim for loss of familial association. Right. So we're talking about the First Amendment here. Right. The lower court held that it could be pursued under the First Amendment. Since the lower court's ruling, this Court determined the case, the Mann case, that was decided in September of last year. And that's a mem dispo. It's a mem dispo. That's correct. It's not binding, is it? It's not binding. But it is instructive, I think. And it's certainly — I submitted a Rule 28J letter this week. It's certainly being followed by district courts with respect to whether or not the First Amendment familial association claim is analyzed the same as the Fourteenth Amendment familial association claim, because what the Mann decision said was that it's analyzed under the same exact standard, regardless of whether it's pled under the Fourteenth Amendment or under the First Amendment. So — and again, the district courts are interpreting it in that manner. Well, I mean, they can interpret it any way they want. That's their prerogative. But you're correct. It's not binding precedent. It's not binding on them, and it's certainly not binding on us. I would argue, Your Honor, that the right to familial association, even without Mann, it's been discussed in the same exact manner. It's been analyzed in the same exact manner within the familial association case law, regardless of whether it arises under the Fourteenth Amendment or the First Amendment. Now, I would — I would admit that there is some murkiness on that issue, because — The district courts saw it a little bit different, right? They saw it a little bit different. And, you know, there has been some — when you're looking at the First Amendment claim for familial association, we've also got some cases out of this court, the IDK case and the erotic service provider case and the Keats case, where the first two provide that in order to have a First Amendment claim for loss of familial association, there should be an expressive component, which doesn't exist in this case. Keats came out and it said, well — That's required? Under those two cases, it's required. And I would like to say that there's a sort of a — that it's a settled issue within this circuit, but I don't think I can, because then in the Keats case, they do not require that same kind of — or they at least appear not to require an expressive component in a First Amendment claim. But in Keats, I would argue that's a little distinguished. It can be distinguished, because in that case, there was some petitioning activity that could be interpreted as expressive. Your standing argument really only goes to the First Amendment familial association claim? Well, Your Honor, the — when you're talking about the familial association claim, the district court already ruled that the Fourteenth Amendment claim, in order to dismiss it — Right. I understand that. But he has another claim. Pardon me? He has another claim as well, his own. Yes. He does. He does have a — Your standing argument doesn't go to that. Well, we have kind of a different standing argument that goes to his own claim, yes, Your Honor. And I can address that. The — he has a claim for — essentially for emotional distress that, as a result of a violation of his Fourteenth Amendment rights, for basically the right to a — to be free of abuse in the foster care setting. Safe. Yes, exactly. What was the nature of the emotional distress that was articulated? In the complaint? In the complaint, yes. The emotional distress articulated in the complaint, I believe it was anxiety, fear. I don't know that there was anything in particular. No. No. Or is there any diagnosed post-traumatic stress disorder or anything from a caregiver that was alleged in the complaint? I don't think there was any diagnosis alleged in the complaint that I'm recalling at the moment. No, Your Honor. I recall it being just general — Kind of a free form, freestanding — Yeah. Emotional — This was developed — all this took place on a motion to dismiss — or on the complaint. Correct. On the pleadings. On the pleadings. Right. But there could be allegations in the complaint regarding treatment or diagnoses or something more specific regarding — I'm not — — emotional distress. It was a lengthy complaint, and I'm not — I could go through it and look for that allegation, Your Honor. Not — it's not coming to mind that there was some kind of — Yeah. I'm not recalling that there was a specific allegation in the complaint talking about any kind of diagnosis. Well, isn't the essence of the 14th Amendment claim that he was harmed because he himself was put at risk, number one, and number two, that he suffered emotional distress because of his having to experience and observe his sister dying? Isn't that the guts of the 14th Amendment? That's what has been alleged, correct. Yes. And, Your Honor, it's our position that the complaint does not plead or adequately plead a violation of the plaintiff's own constitutional right to be free of abuse as a foster child in state custody. But that's more directed at his claim that he is himself at risk. Isn't it more directed at that rather than the emotional distress that he suffered directly from observing what happened to his sister? Well, I think it's — Don't you have to approach him two different ways, each of those things? I don't know that I'm understanding your question appropriately. I mean, he has to prove that his damages flowed from a violation — He hasn't been hurt. Correct. If you say — if he then says, but in that setting, you made me observe what was happening to my sister, and that caused me emotional distress, and that is injury. So one is a mere risk of injury, and the other one is actual injury, correct? That's correct. Right. Yes. And you — but he suffered — if he alleges that he suffered actual injury from emotional distress from observing his sister, that's enough, isn't it? I don't think so, Your Honor. We've cited two cases where Section 1983 cannot be utilized for purposes of just recovering for emotional distress or intentional infliction of emotional distress or just emotional distress without an accompanying — It says that there has to be physical injury. So I would — well — You can only recover damages under 1983 for physical injury. There's no case that says that. In fact, aren't there cases to the contrary? Yeah. Isn't there one called Cutler or something? That's correct. Your Honor, I think the point that I'm trying to make here is that the plaintiff has not  His claim in this case requires — Let me ask you this. Yes. One thing I don't — I'm kind of curious about. So this is all taking place on the allegations in the complaint. Correct. He alleges, as Judge Murphy said, he alleges that he suffered injury, right? Well, Your Honor, I think you have to look at what the type of — And the district court was required to take that as true. Yes. Right? We're not disputing — And you asked for qualified immunity, didn't you? Yes. And she said no. Correct. And that's what got you up here. Well, qualified immunity on the familial association claim and on — Yes. But you got a — you were allowed to invoke this collateral appeal. Yes. Because she denied your claim for qualified immunity. Correct. All right? But your argument here is focused at the allegations in the complaint. That's a 12b-6. Your Honor, I think trying to kind of backpedal and get back to my standing argument on the 14th Amendment claim, what we're arguing is that the plaintiff's claim of injury in this case relies entirely on witnessing what happened to his sister. So for the qualified immunity rubric, we still have to determine whether or not there was a constitutional violation. Correct, Your Honor. So that's your point is you're trying to talk about whether or not there was a constitutional violation. Correct. Because that's part of the inquiry for qualified immunity. Traditionally, that's been the first prong of the qualified immunity analysis, Your Honor. So that — we're arguing that the plaintiff's claim — So wait a minute. So let me ask you this. So is your claim that — is your argument that he — if he proved all these — all of these allegations, jury, were to find all — that there was a violation of the Constitution under the 14th Amendment, your claim is that he hasn't — he can't — is that he still doesn't have a claim because he suffered no damage? No, that's not my — that's not the claim, Your Honor. The claim is that his damages flow not from a violation of his own personal rights, but solely from witnessing the violation of his sister's constitutional rights. Well, how about his exposure to the meth? There's no fact — To being placed in that situation. There's no fact pled that he was actually exposed to methamphetamine. There's no fact pled — I thought they found the baggie with the meth bottle. There was — When they found — after they found his sister, they found the bag, a baggie — There is an allegation — With a rock of crack — not of crack, but of methamphetamine. There is an allegation in the complaint that that is what happened. There's no — But why don't we take that as true? That's what I don't understand. It does have to be taken as true.  He was in the house. And he was — when — at the exact time it was found? No. When his sister passed away. That's what's been alleged. That's what's been alleged. But, again, if you take away the violation of his sister's rights, he has no — there has — there's no violation of his constitutional rights. It's completely dependent. And so it's — we're arguing it's not the violation of his own personal constitutional rights. Are you trying to distinguish between households where the only thing we know from this is that there was meth versus a household where somebody like J.P. is exposed to that, and all kinds of other bad things? Aren't you trying to distinguish the two households? I'm not saying that's wrong. I'm just saying, isn't that what you're doing? You're saying, all we have here is meth. I think that's one distinction that can be made, Your Honor. But also, I think if you look at the Archuleta case out of the Tenth Circuit, that articulates the principle that I'm making here, is that there's no Section 1983 liability for someone who suffers emotional trauma just from witnessing some kind of physical injury to another person. That's the Archuleta case out of the Tenth Circuit. And that's the principle that I'm making with respect to the standing issue on the 14th Amendment claims. I realize that my time is — — to qualified immunity, that there is no case that establishes what's necessary. Standing is a piece of that, isn't it? I would say yes, Your Honor, and my time is almost up. I'll give you two minutes for rebuttal. Okay, thank you, Your Honor. All right. Let's hear from you. Thank you. Opposing counsel? Good morning, Your Honors, and may it please the Court. My name is Liza DeVries. I am here on behalf — and with great honor — on behalf of Shannon Villanueva as the guardian ad litem for JP, who is in the audience today, Your Honors, as well as with my co-counsel Darren Kessler. I think what we need to do here is to separate out the 14th Amendment from the First Amendment, as my opposing counsel has done for you today. As to the 14th Amendment, this is apples and planets. The 14th Amendment claim was clearly alleged. Injury was alleged. Ward does not apply to a foster child's rights under the 14th Amendment. Well, counsel, what is the principal basis for analyzing the sibling interest differently in the First Amendment context as opposed to the 14th Amendment context? Why should those be analyzed differently? Excellent question. May I please contextualize the question to be related only to association rights as opposed to, say, equal protection rights or some other right that derives from the 14th Amendment and is actually expressed in the 14th Amendment? We have several cases interpreting First Amendment interference as deriving the contours from the 14th Amendment but not the source as the 14th Amendment. The source of the association claim is the First Amendment. But that begs the question. Why should there be a different analysis on the — on whether or not the companionship aspect should be reserved in the First Amendment context when we have specifically ruled out that relationship as deserving constitutional protection for 14th Amendment purposes? What's the difference between the 14th Amendment and the First Amendment that should result in a different outcome than Ward in this case? The difference is articulated by the Supreme Court in Roberts and then in J.C. and then coming forward from them in terms of what an intimate relationship looks like. An intimate relationship has necessarily emotional attachment issues. An intimate relationship for a child to a parent is necessarily a familial relationship that has been acknowledged as being covered by both. It goes the other way, too. But Ward relied on Roberts and still did not extend the familial association protection to the sibling relationship. Correct. So Roberts did not persuade the Court in Ward that the sibling relationship was worth — that the sibling relationship should be covered. So I don't understand why you think Roberts would make a difference in the First Amendment context if the Ward panel already considered Roberts in the context of the 14th Amendment. I'm not seeing a reason why there should be a distinction. The 14th Amendment claim for a familiar association most commonly comes up in the situation where you have a death, most of the time by the hands of police. And when you have a death by the hands of police, there's a Federal corollary to the wrongful death claim in a State law. That is the 14th Amendment association claim. If we look at the Ninth Circuit jury instruction, it doesn't even have a scienter requirement. It's tied back to whatever some type of underlying claim might be. The First Amendment, however, has very specific characteristics that are required to allow for the intimate association to exist, the size, the exclusivity, and certainly family. When we have a right to live together by grandparents, domestic partners, same-sex couples, domestic relationships that are one gender or another, all of those folks have been determined to have a right under the First but not the 14th. Keats and Lee in this Court have already been decided that the 14th and the First Amendment do not merge. They are separate. If they are separate, therefore, we are talking about a separate type of right and a separate analysis that would apply to the plaintiff who would have standing to pursue it. Breyer, that's the approach that the district court took.  Well, in this case. Yes, Your Honor. Counsel, let me ask you this. Would you argue that any of the children who were present in that home where your client was present would have a claim for emotional distress? Oh, emotional distress. Under State law, Your Honor? Under the 14th Amendment, the same claim that you are pursuing. Could all of the children in the home who were present, could all of them assert a 14th Amendment cause of action for emotional distress? Based on danger of creation? Based on the same theory you are articulating to us for your client. Okay. I'm sorry, Your Honor. I just want to understand your question. There are three theories, two under the 14th Amendment, one under the First Amendment for association. Are you only speaking of the First Association? Whatever theories you are positing for your client, could any of the children and all of the children who were present in that home, could any or all of them bring the same claims that you're bringing on behalf of your client? I don't believe so. Why not? Because there is a sibling relationship that is an intimate family relationship. And not only that, we're talking about a relationship where you have somebody in State custody. But all of the other children are in State custody as well. And if the theory is that your client suffered emotional distress, why wouldn't their emotional distress be cognizable as well? Because in their case, they didn't have the relationship with the sister that is very clearly described in the complaint. The children had lived together since birth with their biological mother. The children were removed together from their biological home two weeks before. Four days after the children were removed, J.P.'s sister started acting very strangely, was clearly impaired, was required to be hospitalized overnight. We could amend to say there was at least one other instance of drugging that appears to have happened during this two-week period. And this was the only family he knew. The emotional attachment that existed between J.P. and M.M. is the quintessential example of an intimate family relationship between foster care siblings. You make it sound then, in response to your question, that the 14th Amendment is a familial association claim, which you're declining. I am declining the 14th Amendment First Amendment. I'm sorry. The 14th Amendment association claim. But that's how you're describing it. I'm talking about the First Amendment. Or the 14th Amendment, family association and emotional distress. So it sounds like you're pegging your claim to the familial relationship, pretty much. I'm pegging which claim? The First. Thank you. The First Amendment claim, yes. What about the 14th? Well, your emotional distress claim, is that predicated on the First Amendment or the 14th Amendment? The 14th. The emotional distress damage is triggered by all of these violations. But so you don't have a separate claim for emotional damage. No, Your Honor. There's only three. The emotional distress just flows from whatever injury you may have. But you said the reason why the other children wouldn't have this claim is because of the familial relationship. So. I'm sorry. I thought we were talking about the First Amendment, Your Honor. The reason the other children wouldn't have the intimate association First Amendment claim. What about the 14th Amendment claim? Would the other children in the home be able to posit a 14th Amendment claim if they were present in the home when these drugs were there just as your client was? I don't have the facts before me to say yes or no. If the facts are the same. They were there in the home when the drugs were found. And they had emotional distress because of that. Would they have a cause of action? If they were put in an unsafe place, if they lacked adequate care, they were older. They also did not come from a home. I mean, the facts are obviously relevant. Facts make claims or don't. So I don't know if they would because they were older. They were supervised by a different county. The other county that came in to monitor them had been monitoring them for years. I don't know what facts would support their claim, so I'm sorry, Your Honor. I can't answer the question. Let me ask you. Let me do my own follow-up question on that. Explain to me the essence of your 14th Amendment state-created danger claim. Four days after J.P. was placed in a foster home, his sister presented symptoms of being quite impaired. Yes. And required hospitalization. By October 4, 2015, it was determined by a hospital that there was amphetamines in this little baby girl's system. Yes. Rather than do anything that was required under the 14th Amendment, either because of a special relationship and a foster child's right to be put in a safe placement or because of the danger creation of not being put into a more dangerous situation. Either way, J.P. was put back or had to stay in this home. He had no choice. He wasn't going to work. He had no choice. He couldn't say, I want to move. I want to change jobs. He was required to stay in that home until and for much longer than was necessary because here the county and here we're going into causation and more facts. But the county had numerous requirements to ensure the safety of these children in this home. What was the state-created danger to J.R.? What was the state-created danger specifically? That he would be exposed to the toxic effects of amphetamines that had already been found in his sister's blood. And what was the harm that he suffered? When you stand up in front of the jury, what are you going to ask them to compensate you for, to compensate him for? I am going to ask him to compensate for the fact that he and his sister were alone in that home. Not the sister. What is the damage? When you get up there and say, I want my, you should award my, ladies and gentlemen of the jury, you should award damage to my client, and here's how you should think about damages. J.P. presents with lifelong emotional trauma founded in a lack of trust. He was told in that home by the county defendants that he was safe. He is going to suffer for the rest of his life that something bad is going to happen to him or ones around him because of what happened to him in that home. He is going to be connected to what happened to him in that home for those two weeks for the rest of his life. So, okay, can you break that down more? Can you say that he has been harmed and should be compensated because he was put at risk? Correct. And so then you have to measure how he's harmed by that risk. And then you're also saying he was actually harmed by emotional distress of observing his sister. Correct, Your Honor. Those are two tracks, right? Exactly. And both of those tracks and both of those arguments relate to causation and damages that will be made to a jury. So, counsel, tell me the case, the strongest case that supports your argument that the harm that was suffered by your client, J.P., is cognizable under the Fourteenth Amendment. What's your strongest case support? Will we start with Carey v. Fifis? Give me your absolute strongest case for the proposition that the harm that you assert is cognizable under the Fourteenth Amendment. So we have R.J. v. Kohler where you have an LGBT institutionalized minor in a juvenile detention center in Hawaii who had emotional harm. You have Youngblood, which is talked about, you know, the same, you know, you could Is R.J. your strongest case for emotional? It's one of many cases. Well, I want your absolute strongest case that you have for the proposition that the harm that's closest to what your client suffered is cognizable under the Fourteenth Amendment. One moment, Your Honor. Thank you. In my brief, there is a section from page 16 through 19 which talks about harm. And one of the cases cited out of the Southern District of New York says at Marisol v. Giuliani at 929-FSEP-662-675 talks about children are, quote, are by their nature in a developmental phase in their lives and their exposure to traumatic experience that can have an indelible effect upon their emotional and psychological development and cause more lasting damage than many strictly physical injuries. Does that talk about the Fourteenth Amendment? Yes, it does. It talks about substantive due process rights to be free from unreasonable and unnecessary intrusions on their emotional well-being. Do you have a Ninth Circuit case that supports your argument? I have... In the Hawaii case, the R.G. Kohler case, it cites to the Third Circuit for reference. So that's a district court case. That's a district court case citing to the Third and the Seventh Circuit, also citing to Young v. Romero. All right. Thank you, counsel. You're welcome. We also have an amicus brief, Your Honor, that talks significantly about harm to children and foster children in particular. All right. Thank you. Your time is up. Thank you. Very briefly, Your Honors. Following up on the Fourteenth Amendment issue, I think our position on that claim is that essentially it's a bystander claim. And I mentioned at the end of my opening remarks that the Archuleta case spoke to that issue, and I feel that that case is probably our strongest case on that. If the Fourteenth Amendment claim is allowed to stand in this case, this would, I think has been alluded to by the Court, this would potentially give rise to all manner of folks who are in custody, whether it be foster children, other juveniles in custody, pretrial detainees, arrestees, anyone who's in the State custody, to sue for emotional trauma for witnessing unpleasant events or other people's injuries while they are in custody. An inmate could conceivably... What if it was just limited to special relationships? Those are... I'm sorry. All right. So it's not just a normal bystander, but it's a brother of a man. Well, the folks I just mentioned are all considered to be in a special relationship with the State because they're in State custody. I understand that, but I'm talking about a special relationship between the observer and the person physically harmed. You're saying anybody... Right. ...whose harm derives merely from observation should not be recognized. Well, Your Honor, in the Archuleta case, the person who was suing was a child for witnessing harm being done to his father. So there was clearly a relationship there that was arguably more of a protected relationship than a sibling relationship. So I don't think that that's a material distinction. Thank you, Your Honor. Okay. Thank you, counsel. We appreciate it. Very interesting case. The matter is submitted at this time. And that ends our session for today.
judges: Murphy, Paez, Rawlinson